## McTAGUE v. DOWST.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

1. NEGLIGENCE—RECKLESS DRIVING—CHILDREN—INJURIES—EVIDENCE.

Where disinterested eyewitnesses testified that plaintiff, a child of 5 years, was knocked down in the street by a team, which was going at high rate of speed, and that the front wheel of the heavy truck wagon ran against her; and the driver and a young man on the seat with him and two bystanders, one of whom was an ex-convict, admitted the team knocked her down, but denied that the wheel ran against her and the rapid driving,—a verdict finding defendant guilty of negligence was not contrary to the evidence.

2. SAME—MEDICAL EXAMINATION—INSTRUCTIONS.

Where a doctor was sent by defendant to examine a child who had just been run over in the street by one of defendant's teams, and a serious nervous trouble developed as a result of internal injuries, an instruction calling the attention of the jury to the fact that, in a hasty examination soon after the accident, the secondary appearances of the internal injury could not be detected, was proper.

3. SAME.

Where a child was thrown down in the street and injured by a passing team, and plaintiff claimed the front wheel of the wagon ran on the child, and then stopped and dropped back, an instruction that the jury must judge if the front wheel of the wagon came against the child so as, at least, to "pinch it" between the pavement and the wheel, was not erroneous, in that the use of the word "pinch" in the description of the accident was prejudicial to the defendant.

4. SAME—PERMANENT INJURIES—DAMAGES—INSTRUCTIONS.

Where a child was run over in the street and injured by a passing team, resulting in serious nervous injury, an instruction that the jury might compensate her for such damages as they could see from the evidence in the case would probably result to her in the future was proper, where there was evidence that the injuries were of a permanent character.

5. SAME—ACCIDENT INSURANCE—CONSIDERATION BY JURY.

Where defendant in an action for injuries sustained by a child, who was run over in the street by one of defendant's wagons, brought out the fact, on cross-examination, that he carried accident insurance, he cannot complain that knowledge of such fact influenced the jury to return a liberal verdict.

6. SAME—EXCESSIVE VERDICT.

Where a child who was run over in the street by a passing team suffered injuries from which she became hysterical, and walked with a shuffle, and lost control of her muscles, a verdict of $10,000 was not excessive.

Appeal from trial term, Kings county.

Action for injuries by Josephine McTague, an infant, by Hugh McTague, her guardian ad litem, against Arthur A. Dowst. From a judgment in favor of plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

H. Snowden Marshall, for appellant.
Thomas F. Magner, for respondent.

GOODRICH, P. J. The action is brought to recover damages for injuries occasioned to a girl of 5 years, on Berry street, Brooklyn,

by the defendant's heavy two-horse truck. There is no question that the child at the time in question was on the street, was thrown down by the team, and received injuries thereby. The method in which she was injured and the extent of the injuries are in dispute, and on both questions there was a clear conflict of evidence. The plaintiff's evidence tended to show that the child lived with her mother at No. 141 Berry street; that while the mother was calling from the window to another child the plaintiff slipped out of the room, ran down, and out onto the sidewalk, stepped from the curb into the roadway, and was there run over by the defendant's wagon, which was going at a high rate of speed; that she was trampled by the horse which was nearer to the curb, and that the fore wheel ran upon her body, inflicting very severe injuries, which caused chronic cystitis and spinal injuries of a permanent character. The testimony of the defendant's witnesses tended to show that the truck was being driven at moderate speed; that the child suddenly stepped off the curb, and backed into the horse, as the team was passing, was thrown down, and was picked up between the horse and the wheel; that the wheel did not touch her; and that her injuries were not of a serious character. The court submitted to the jury the question of the truth of these two theories, and, on the conflicting evidence, could not have done otherwise. The jury rendered a verdict for $10,000, and the defendant appeals.

The defendant's counsel earnestly contends that the verdict is against the weight of evidence. A careful study of the record does not convince us of the validity of the contention. The plaintiff produced disinterested eyewitnesses of the accident, whose testimony supported her theory of the accident. The defendant produced as witnesses the driver and a young man who was with him on the truck and two bystanders (one of whom was a discharged convict), who gave testimony directly contradicting material evidence of the plaintiff. Under these circumstances, we cannot say that the jury were not justified in believing the witnesses for the plaintiff in preference to those for the defendant. Certainly there is no such preponderance of evidence for the defendant as requires the interference of an appellate court with their verdict.

The defendant excepted to the following charge:

"You have seen Dr. O'Brien upon the witness stand, who claims that he made an examination very soon after this accident, and that he discovered no fractures or evidences of external injury, and I believe he examined so far as the pulse of the child was concerned, made up his mind quickly that there was no trouble, and left the premises. It will be for you to consider the examination made, and the manner in which he described it, under the circumstances, —a hasty examination. He says that it was a thorough examination, but, from the fact that it was made while the child was still upon its mother's lap, it will be for you to say whether it was a thorough examination, or whether it was more superficial than he is willing to admit."

It appeared that immediately after the accident Dr. O'Brien was requested by the driver to go and examine the child. The doctor testified that he made a careful examination, while other witnesses gave testimony tending to show that his examination was hasty and super-

ficial. Any doubt existing as to this portion of the charge is at once removed by an examination of the subsequent charge, as follows:

"The Court: I do not want to say anything to the jury here to' prejudice them in any way against Dr. O'Brien. The idea I desire to place before the jury was that he was called in there, and made but one examination, and did not remain, with the child long enough so that the secondary appearances,— for the secondary appearances to have come to his knowledge. I did not desire to say anything more about the examination than merely that. Mr. Marshall: The doctor stayed twenty minutes, stripped the child, and looked her all over at every point, according to his testimony,—at every point where an injury is claimed to have been inflicted. The Court: I believe that is so. The injury of the plaintiff here, if I understand it, is an internal injury, which developed, as is testified to by Dr. Webber, so that it may very well be that Dr. O'Brien, in the examination that he made in the first instance, without having repeated it, may not have discovered it; that is the idea I desired to call the jury's attention to."

Another exception to the charge arises out of the following remark of the court in commenting upon the testimony of Mr. Donough, a bystander:

"At this time, as the child stood there, he says that he could see the driver, as he estimates it, two or three houses away from the child, and approaching the child, as he described it at first, at full speed, and then he says upon a trot, —that is his explanation,—and the witness, seeing the relative position of this child and the driver, and fearing a collision, or fearing an accident, says that he shouted to the driver to stop, and that apparently to him the driver was not observing, not looking,—seeing the child; that he shouted to him to stop, and that he did not at once stop, but came on until he came into collision with the child, who was thrown under the horses' feet; and that the driver did check the team before the wheel of the wagon had entirely passed over it, but that the wheel of the wagon came against the body of the child, so as, at least, to pinch the child between the pavement and the wheel."

The defendant excepted, as follows:

"Mr. Marshall: I will take an exception to that part of your honor's ruling in which your honor states that it appears by the testimony of one of the plaintiff's witnesses that the wheel of this wagon came so near—approaching so closely—to the person of the plaintiff that it pinched her. In that' connection, my recollection of the evidence is that there is no middle course left here; that the plaintiff's witnesses have not testified that there was a mere pinch, but that the wagon rolled up on top of the body, and rested on top of the body of the plaintiff, and then rolled back, and there is no question of any pinch. The Court: The witnesses give it from their standpoint. My description of it was simply another description of what they testified to as to the contact of the wagon wheel with the body of this child. They do not pretend that it ran over the child, but that it came against the child as it lay there on the street. Mr. Marshall: Rolled up on her person, according to the testimony. The Court: How far it rolled, and all that, I do not know that the witness undertook to tell exactly,—the position of this wagon wheel. Mr. Marshall: Then your honor will allow me an exception to the statement which your honor has made. The Court: It is a thing the jury must judge, to what extent this wagon wheel came in collision with the body of this child. To what extent it came in contact with it the jury must say. They are not absolutely bound by the testimony of the witness who estimates that it came over the child or came partly upon it. The effect of the testimony was that the wagon wheel came in contact with the body of this child as it lay there on the pavement, and as to the extent of it the jury are the judges. Mr. Marshall: Your honor will recollect that, in that connection, I asked the witness whether he rolled the wheel back off the body of the child with his arm, or whether the horses were backed, and I take an exception to any statement to the jury that there is any middle course in this case between finding that the wheel never touched the child or that it rolled up on her body."

The court properly alluded to and fairly stated the evidence of the witnesses upon the subject. The use of the word "pinch" was merely an illustration of the method in which the wheel might have come upon the plaintiff's body. Indeed, it may be said that the word was more favorable to the defendant than to the plaintiff, whose witnesses had testified that the wheel actually ran up on top of the plaintiff's body instead of simply pinching it. We see no ground for exception in this respect.

A third exception is to the instruction that the jury might "compensate her for * * * such damages as you can see from the evidence in this case will probably result to her in the future." Dr. Webber was called in to see the child an hour after the accident, and attended her up to the time of the trial. He minutely detailed her symptoms and condition, laying considerable stress upon injuries to the bladder, resulting in chronic cystitis, and a concussion of the spine. He did not testify that the cystitis would be permanent, but he did testify, in answer to the question, "Can you say with reasonable certainty whether the spinal trouble is permanent or not?" "My idea is that it is; yes, sir." The court charged:

"You will compensate her for the pain and suffering that she has undergone because of this injury, for her inability to get about, for the complaint she has suffered from up to this time, and such damages as you can see from the evidence in this case will probably result to her in the future."

The exception was as follows:

"Mr. Marshall: I should like to take an exception to that portion of your honor's charge where you instruct the jury that it may estimate,—'what can you see is probable to result in the future from her damages?' I except to it, for the reason that there is no evidence of any future damages whatsoever. The Court: The jury may compensate her for what the jury can see is probably to result from these injuries in the future, basing their calculations entirely upon the evidence as it appears in this case."

There was no ground for the original exception, and the defendant did not again except after the careful reinstruction above.

We do not agree with the defendant's contention that the verdict is excessive. The jury believed the medical testimony showing the injuries and their result. The child was in court, and Dr. Webber testified specifically to her symptoms, actions, and condition:

"Q. What is the child suffering from at present? A. Well, at the present time, there seems to be more weakness of the nervous system,—the co-ordination of the muscles. They cannot seem to walk right; cannot make one leg go the way it wants to. It will twist around, and my diagnosis was and is that it was injury to these spinal muscles that interfered with the action of the muscles,—the injury to the nerves."

If the defendant had deemed this statement incorrect, he could easily have contradicted it by his own physician, who examined the child just before the trial, Dr. Riggs. He, on the contrary, testified, on cross-examination:

"The inclination of her head and shuffling walk, when she does walk, and this retiring and crying, are largely subjective symptoms. Not altogether so, because they are designed at times. Sometimes she has it and sometimes she does not. I saw her in court this morning. She stood up as straight as you do, and I saw her on other occasions when she did not. Her position was there, and the shuffling walk and the irritability and the nervousness and the·

crying,—they were all there. I mean to say she is hysterical. It is a nervous disorder; it is not a disease. I don't mean to say that the child is simulating. She is suffering from those functional things which we call nervous shock and hysteria and all that, and the base of it may be in the spinal cord, for all I know, and for all anybody else knows; but there is nothing there that anybody does know about. I will admit I do not; nobody else does."

The defendant refers to the fact that the jury awarded the full amount of the damages demanded in the complaint, and contends that "the continual injection into the case of the fact that the defendant was insured in an accident insurance company may in some measure account for this fact." But the fact of insurance in a casualty company was first brought to light on the counsel's own cross-examination of Dr. Webber, who testified that the defendant or some one in his office, in answer to a message to him over the telephone, informing the defendant of the injury to the plaintiff, said that he was insured, and that the matter did not interest him much. After this fact was brought out by the defendant, subsequent references to it by the plaintiff could not have occasioned any serious injury to the defendant. No other exceptions require consideration. The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.